Matthias, J.
 

 The single question of law presented in this case is whether a person adopted pursuant to' and in accordance with the law of a state other than; Ohio, which, at the time of the adoption, was the domicile of the adopting parent, is an “adopted child”’ within the purview of the provisions of Section 10504-5, General Code, even though such person had attained his majority at the time of his adoption. The pertinent provisions of Section 10504-5, General Code, are a& follows:
 

 “If a testator dies leaving issue of his body, or an, adopted child, living, or the lineal descendants of either, and the will of such testator gives, devises or bequeaths the estate of such testator, or any part thereof, to a benevolent, religious, educational or charitable, purpose # * * such will as to such gift, devise or bequest, shall be invalid unless it was executed according to law, at least one year prior to the death of the testator.”
 

 It is the contention of the appellant that not only the legality of the adoption, but, also, the rights and obligations resulting from the establishment of the relationship of adopting parent and adopted child, are governed and controlled by the law of their domicile under and pursuant to which the adoption was consummated-The appellant especially urges that, as a result of the
 
 *206
 
 adoption proceeding in the state of New York, which was concededly legal and regular, in all respects, his status as the adopted child of William P. Wentz became fixed and established, and that he is still the legally adopted child of William P. Wentz with all the rights of inheritance of a child born in lawful wedlock, although the adopting parent thereafter removed to this state, where he continued to live and where his estate is being administered.
 

 The appellee Masonic Home, while not questioning the legality of the adopting proceedings, contends that the phrase “adopted child” as used in Section 10504-5, General Code, relates only to such person as is eligible for adoption under the laws of this state, and hence that the appellant is precluded from the benefits of such statutory provision. This claim of such appellee' is based upon the theory that the declared policy of this state with reference to adoption is, in the particular under consideration here, inconsistent with the laws of New York, in that the laws of that state authorize and provide for the adoption of adults as well as minors, while under the law of this state only minors are eligible for adoption. Appellee Masonic Home therefore urge's that to make the provisions of Section 10504-5, General Code, applicable to the situation presented in this case would require that the term ‘ ‘ adopted child” be so extended by construction as to include an “adopted adult.”
 

 The contention of such appellee was sustained by the Court of Appeals, as indicated in the opinion wherein it held that “inasmuch as the laws of Ohio do not permit the adoption of adults, and the word ‘child’ as used throughout the adoption statutes means minor child, that the words ‘adopted child’ as used in Section 10504-5, General Code, being
 
 in pari materia
 
 with 10512-9 to 21, General Code, means an adopted minor child.”
 

 
 *207
 
 We find great difficulty in following this reasoning, for it would lead to the conclusion that a person, though adopted when a minor, pursuant to the provisions of Section 10512-9, General Code (118 Ohio Laws, 626), but who had reached his majority prior to the death of the adopting parent, would not be entitled to the benefit of these statutory provisions.
 

 Section 10512-19, General Code (114 Ohio Laws, 474), defined the respective rights, duties and obligations of the adopting parents and adopted child. When that section provided that “the [adopted] child shall1 be invested with every legal right, privilege, obligation and relation with respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock,” it did not limit the benefits therein enumerated to the period of the minority of an adopted child. The term “adopted child” characterizes the status of the person adopted and defines his relationship to the adopting parent. Throughout our statutes of descent and-distribution the words “child” and “children” are used to designate relationship and have no reference whatever to age. The term “adopted child” means a child by adoption.
 

 Under the law of the state of New York, as in effect at the time of the adoption of Louis C. Wentz, adoption was defined as “the legal act whereby an adult person takes another adult person or a minor into the relation of
 
 child
 
 and thereby acquires the rights and incurs the responsibilities of
 
 parent
 
 in respect to such adult or minor.” (Italics ours.)
 

 It is clear, therefore, that under the law of New York the appellant was an “adopted child.”
 

 The principle involved is stated in 2 Corpus Juris Secundum, 459, Section 66, as follows:
 

 “According to some authority, and probably the bet
 
 *208
 
 ter rule, foreign adoption statutes have no extraterritorial effect, and the right of inheritance of the adopted child is governed by the law of the state in which the succession takes place and not by the statute under which he was adopted, the effect of the doctrine of comity being to regard children of foreign adoption, whose rights are to be adjudicated in the forum, in the same light as though they had been duly adopted under the laws <of the forum, at least insofar as real estate is concerned, even though the foreign adoption be by a method different from the domestic one; Accordingly Ihe child’s right of inheritance in the state of succession is not affected by the fact that the statute under which ihe was adopted gave him a less extensive right, and conversely his rights are not enlarged by the fact that the‘statute under which he was adopted gave him a greater right than the one in which the succession takes place.
 

 . “Furthermore, if the statutes of descent and distribution are construed to include only children adopted under the local statute, children adopted in other states are given no rights of inheritance. ’ ’
 

 1 American Jurisprudence, 668, Section 67, states the general principle applicable as follows:
 

 “The general rule, subject to exceptions hereinafter noted, is that the status acquired by adoption in one state will be recognized in another, and the rights of the child to inherit will be given effect as to property located in the latter state, provided such rights are not inconsistent with those incident to the status of adoption created in such state, or with the laws and policy of such state. This rule is prescribed by some statutes. In some of the states, provision has been made for •adoptions effected in other states, by requiring a transcript of the record of such adoption to be filed and entered upon the order book of some circuit court within the state. Such adoption thereafter has the same force
 

 
 *209
 
 and effect, and such adopted child has the same rights, as if the original adoption had occurred in the state. On the other hand, until the statute has been complied with, the courts of the state will not recognize or enforce rights based upon adoptions taking place in another state. The filing of a transcript pursuant to such a statute is effective to establish the rights of the adopted child, although not made until after his majority and the death of the adoptive parents.
 

 “In the application of this rule, the view is taken that the adopted child may inherit through his adopting parent, at least where the statutes of the two states are substantially similar in this respect. The rule has also been applied where the statutes are conflicting in this respect.
 

 ‘ ‘ The rule may be- more accurately stated to the effect that the question whether the child has acquired the status of an adopted child, so as to allow him to inherit property in a state other than that of his adoption, will be determined by the law of the state creating the adoption, though that law, in respect to form and procedure of adoption, is dissimilar to that of the situs of the property, and if the child has been validly adopted by that law, that status, with its incidental rights, if any, as to inheritance, will follow him to, and be recognized in, the state where the property is, entitling him to inherit it, if and to the extent that the law of the latter state allows a child there adopted to inherit. The rule has been applied where there is a radical difference in the form and procedure by which the adoption proceedings are conducted. For example, the rule has been adopted where the adoption was by deed, and also where it was by private contract, instead of by a judicial proceeding as provided in the law of the state where the property is situated or the decedent resided.
 

 “The American Law Institute has stated the rule
 
 *210
 
 as follows: ‘ The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given by the latter state to the status of adoption when created by its own law.’ ” Restatement of Conflict of Law, 209, Section 143.
 

 Applying the abstract rule thus stated to this case, we have this definite and concrete proposition: The status of adoption created by the law of the state of New York will be given the same effect in Ohio as is given by Ohio to the status of adoption as created by its own law.
 

 It seems well settled that the rights of inheritance of property are governed and controlled by the laws of the state of the residence of the ancestor at the time of his death, and that a state may by its statutes of descent and distribution exclude children adopted by proceedings in other states without violating any federal right.
 
 Hood
 
 v.
 
 McGehee,
 
 237 U. S., 611, 59 L. Ed., 1144, 35 S. Ct., 718. That case involved the application of a statute of descents of the state of Alabama, which expressly excludes children adopted by proceedings in other states. The precise holding of the court was that “Alabama is the sole mistress of the devolution óf Alabama land by descent. ’ ’ See, also,
 
 Olmstead
 
 v. Olmstead, 216 U. S., 386, 54 L. Ed., 530, 30 S. Ct., 292, 25 L. R. A. (N.S.), 1292.
 

 We have no such restrictive statute in Ohio and no declared public policy which prevents or precludes the investment of one adopted in another state with all the benefits accorded an adopted child by the laws of this state, whether such person was a minor or adult, when adopted.
 

 Again examining the provisions of Section 10504-5, G-eneral Code, we observe the general and all-inclusive terms employed. The rights and benefits thereby conferred are not restricted to persons adopted under the
 
 *211
 
 laws of this state nor are sneh rights and benefits limited to minors. Such limitation or restriction should not be inserted by judicial construction. A child of the testator, natural or adopted, though having attained his majority at the time of the testator’s death, may avail himself of the beneficial provisions of this statute.
 

 Under the law of the state of New York, a person there adopted assumes the same duties and obligations toward the adopting parent as does one adopted under the laws of this state, and such duties and obligations, of course, continue throughout the life of the adopting parent.
 

 In view of the fact that one adopted in this state shortly before reaching the age of 21 years and being an adult at the time of the death of the adopting parent would be entitled to the beneficial provisions of the statute, there seems no inconsistency or injustice in according the same right to one legally adopted in New York immediately after reaching the age of 21 years, although the adopting parent had thereafter acquired a residence in this state and resided here at the time of his death.
 

 The testator William P. Wentz died “leaving * * * an adopted child, living.”
 

 The only case decided by this court, which it is claimed has any bearing whatever upon the question presented here is that of
 
 Theobald
 
 v.
 
 Fugman,
 
 64 Ohio St., 473, 60 N. E., 606. That case involved a situation where a testator died within the year following the execution of Ms will, leaving one who was his ‘ ‘ designated heir” under Section 4182, Revised Statutes (now Section 10503-12, General Code). It held only that such “designated heir” was not issue of the body of such testator within the meaning of Section 5915, Revised Statutes (now Section 10504-5, General Code).
 

 Numerous cases from various jurisdictions have
 
 *212
 
 been cited, but neither the diligence of counsel nor the independent research of the court has produced any-reported decisions directly in point. The most helpful one, not only in the issue decided but also in the reasoning of the court, is that of
 
 Ross
 
 v.
 
 Ross,
 
 129 Mass., 243, 37 Am. Rep., 321. It has been frequently followed and applied in cases involving kindred questions. Chief Justice G-ray, in the course of the opinion, made the •following pertinent statements:
 

 “It is a general principle, that the status or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in that other’s property, is fixed by the law of the domicile; and that this status and capacity are to be recognized and upheld in every other state, so far as they are not inconsistent with its own laws and policy.
 

 “* * * But the status or condition of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicile which 'creates the status, at least when the status is one which may exist under the laws of the state in which it is called in question, and when there is nothing in those laws to prohibit giving full effect to the status and capacity acquired in the state of the domicile.
 

 “Á person, for instance, who has the status of child of another person in the country of his domicile, has the same status here, and as such takes such share of the father’s personal property as the law of the domicile gives him, and such share of his real estate here as a child takes by the laws of this commonwealth, unless excluded by some positive rule of our law. ■
 

 “* * * The law of the domicile of the parties is generally the rule which governs the creation of the status of a child by adoption. [Cases cited.] The status of the demandant, as adopted child of the intestate, in the state in which both were domiciled at the
 
 *213
 
 time of the adoption, was acquired in substantially the same manner, and was precisely the same so far as concerned his relation to, and his capacity to inherit the estate of, the adopting father, as that which he might have acquired in this commonwealth, had the parties been then domiciled here.
 

 “* * * It is argued that the words ‘so adopted’ imply that children otherwise adopted are incapable of inheriting lands in this commonwealth. But it appears to us that these words, in the connection in which they stand, warrant no such implication; and that the Legislature, throughout these statutes, had solely in view adoption by or of inhabitants of this commonwealth, and did not intend either to regulate the manner, or to define the effects, of adoption by and of inhabitants of other states according to the law-of their domicile.”
 

 The syllabus of the case is as follows:
 

 “The status of any person, with the inherent capacity of succession or inheritance, is to be ascertained by the law of the domicile which creates the status, at least when the status is one which may exist under the laws of the state in which it is called in question, and when there is nothing in those laws to prevent giving full effect to the status and capacity acquired in the state of the domicile.
 

 “A child adopted, with the consent of its father and the sanction of a judicial decree, in another state, where the parties are domiciled at the time, under a statute by which a child so adopted has the same rights of inheritance as legitimate offspring in the estate of the adopting father, is entitled, after the adopting father and the adopted child have removed their domicile into this commonwealth, to inherit here the real estate of such father as against his collateral heirs; although his wife has given no formal consent to the adoption, as is required under the statutes of adoption of this commonwealth. ’ ’
 

 
 *214
 
 The confusion that would follow from the application of any rule other than that the status is to be ascertained from the law of the state whereby such status is created is manifest when the marriage relation is considered. There can be no improvement upon the clear statement of Chief Justice Gray in
 
 Boss
 
 v.
 
 Boss, supra,
 
 which is as follows:
 

 “If a marriage (in the proper, sense of the term, not including Mormon or other polygamous marriages; [case cited]) is celebrated in one state, according to the form prescribed by its laws, between persons domiciled there, and competent to intermarry, it is universally admitted that the woman must be recognized everywhere as the lawful wife of the man, and entitled as such upon his death to such dower in his lands as the law of the state in which they are situated allows to a widow; although it is this law, and not the law of the domicile, which fixes the proportion that she shall take.”
 

 Other cases bearing upon the question in issue are as follows:
 
 Van Matre
 
 v.
 
 Sankey,
 
 148 Ill., 536, 36 N. E., 628, 39 Am. St. Rep., 196, 23 L. R. A., 665;
 
 Keegan
 
 v.
 
 Geraghty,
 
 101 Ill., 26;
 
 Finley
 
 v.
 
 Brown,
 
 122 Tenn., 316, 123 S. W., 359;
 
 In re Dennis’ Estate,
 
 98 Vt., 424, 129 A., 166;
 
 In re Finkenzeller’s Estate,
 
 105 N. J. Eq., 44, 146 A., 656;
 
 Pyle
 
 v.
 
 Fischer,
 
 278 Ky., 287, 128 S. W. (2d), 726;
 
 Cribbs
 
 v.
 
 Floyd,
 
 188 S. C., 443, 199 S. E., 677;
 
 Shaver
 
 v.
 
 Nash,
 
 181 Ark., 1112, 29 S. W. (2d), 298; and
 
 In re Riemann’s Estate,
 
 124 Kan., 539, 262 P., 16.
 

 It is our conclusion that, the status of the appellant as the adopted child of William P. Wentz having been legally fixed and established, he must be accorded the rights and benefits of the provisions of Section 10504-5, General Code.
 

 It follows that the judgment of the Court of Appeals is reversed and the cause remanded to the Probate
 
 *215
 
 Court for further proceedings in accordance with this opinion.
 

 Judgment reversed.
 

 Weygandt, C. J., Hart, Zimmerman, Bell, Williams and Turner, JJ., concur.