No. 39,634

MAY REEDER MEEK, WILLIAM HUGHES, MARY EGBERT, BARNARD HUGHES, BERNICE SPRY, DEAN HUGHES, PHILIP HUGHES, CHARLES HUGHES, ELVINA HUGHES, MYRTLE HUGHES, HARRY D. HUGHES, VIRGIL L. HUGHES, FRANK HUGHES, CONNARD HUGHES, BLANCH FRANCKE, HARLEY BENJAMIN VAN CLEAVE, OLIVE LOUISE WOOD, and GRACE W. DONNER, *Appellants*, v. EARL AMES, *Appellee* (MARY JANE JEFFRESS, and CLARIBEL JEFFRESS, *Defendants*).

(280 P. 2d 957)

Opinion filed March 5, 1955.

*Roy S. Lowe,* and *George A. Lowe,* both of Olathe, argued the cause, and *Roy Goins Lowe,* of Olathe, was with them on the brief for the appellants.

*Howard E. Payne,* of Olathe, argued the cause, and *G. A. Roberds,* of Olathe, was with him on the brief for appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action in which plaintiffs sought to recover damages for the alleged wrongful detention of real estate and to have themselves declared the owners of the real estate under the will of Benjamin Reeder and entitled to possession thereof. In a former appeal the ruling of the trial court striking certain allegations of their petition was sustained and reference is made to

the opinion in *Meek v. Ames*, 175 Kan. 564, 266 P. 2d 270, for the statement of facts therein. After the above opinion was filed the plaintiffs filed a second amended petition, hereafter referred to as the petition.

For present purposes it may be said that the petition alleged the status of the plaintiffs and their relationship to Benjamin Reeder and Maude Reeder Ames; that Benjamin Reeder died June 12, 1914, leaving a last will which was duly admitted to probate; that under the terms of his will he devised to his daughter, Maude Reeder, a half section of land for her natural life only, subject to the life use of his wife Diana S. Reeder, and at the death of his daughter Maude Reeder, all the land devised should go to and be the absolute property of her children. Similar devises were made to other daughters. The testator further provided that if at the death of any of his daughters she should have no children living then the real estate devised to her should be divided equally between his other daughters; that Diana S. Reeder died October 10, 1928; that Maude Reeder Ames died May 10, 1951, leaving no children living entitled to inherit under the will of Benjamin F. Reeder, and as of the last date all of the title to the above half section of land vested in and became the property of the plaintiffs who had made demand upon the defendant for possession, which had been refused to plaintiffs' damage. They prayed for possession of the real estate and damages for its detention.

The record as abstracted does not disclose that any defendant other than Earl Ames filed any pleadings or participated in the trial.

The defendant Earl Ames filed an answer admitting that Benjamin Reeder died leaving a will, the relationship of the plaintiffs to him and that Maude Reeder Ames died May 10, 1951. He denied that Maude Reeder Ames left no children entitled to take under the will of Benjamin Reeder and alleged that she was survived by one child, Mary Jane Jeffress Ames, who was entitled to take under the will; that on or about September 7, 1937, defendant Ames and his wife Maude Reeder Ames adopted Mary Jane Jeffress as their own child and heir under proceedings had in the probate court of Johnson county, Kansas, a copy of the order and decree of adoption being attached to the petition, and that at the time of the death of Maude Reeder Ames the said Mary Jane Jeffress Ames was the child and heir of Maude Reeder Ames and the answering

defendant and was entitled to and did inherit the described real estate; that on May 18, 1951, Mary Jane Jeffress Ames, then an adult, conveyed all her interest in the real estate to Earl Ames, the warranty deed of conveyance being duly recorded and a copy being attached to the petition; that by virtue of all of the aforesaid Earl Ames was now the owner and in possession of the real estate and was entitled to an order and judgment of the court to that effect and he so prayed and asked that his title be quieted as against the plaintiffs. We here note that the adoption proceedings show that Mary Jane Jeffress was 19 years of age at the time of her adoption, and that the deed above mentioned expressed a consideration of $1.00, settlement of property rights "and other valuable considerations."

The plaintiffs' demurrer to the above answer was overruled and they filed a reply that an adoption proceeding was had in which Earl Ames and Maude Reeder Ames purported to adopt Mary Jane Jeffress, but they alleged that such proceeding was instituted and prosecuted in bad faith and pursuant to a conspiracy between Earl Ames, Mary Jane Jeffress and her natural mother Claribel Jeffress for the sole purpose of obtaining the above real property described in the will of Benjamin Reeder and for the purpose of defrauding plaintiffs of their rights of inheritance and ownership in said real estate and in disregard of the purposes and intents of Benjamin Reeder as expressed in his will in view of the circumstances and law in effect when the will was made; that the adoption proceedings were had with an oral understanding Ames and his wife would adopt Mary Jane Jeffress for the purpose of permitting her to inherit the property involved and that she was to receive it only for the purpose of conveying the fee to Earl Ames; that she was to continue to be known as Jeffress, to reside with her mother, to use the name Ames only on legal documents, and to continue as the child of her natural mother and the Ames were to assume no obligation, financial or otherwise, have no parental control as to Mary Jane and that she would not live at their home, which agreement was carried out. Plaintiffs set forth the language in the statute providing for adoption proceedings in the probate court appearing as G. S. 1935, 38-105; that the adoption was had in 1937 and that at the date of Benjamin Reeder's death certain statutes were in effect, which provided that the period of minority of females extended only to 18 years and that adoption

proceedings affected only minors. Other allegations enlarged upon those reviewed, contained an admission Mary Jane Jeffress Ames executed a warranty deed to Earl Ames on May 18, 1951, and a denial that, on account of the alleged fraud, it conveyed any title to Earl Ames. They alleged they were entitled to a judgment that Maude Reeder Ames died leaving no child or children entitled to take under the will of Benjamin Reeder.

We here note that plaintiffs filed a motion demanding a trial by jury and a motion for a change of venue on account of disqualification of the trial judge. These motions were denied and a trial was had, following which the trial court made findings of fact, and conclusions of law, which include the status of the parties; that Benjamin Reeder died June 12, 1914; that Maude Reeder married Earl Ames in 1913 and died May 10, 1951; that Maude Reeder Ames and her husband legally adopted Mary Jane Jeffress, a minor female child, as their own child and heir on September 7, 1937, in the probate court of Johnson county; that the decree of adoption had never been set aside, modified or appealed from; that the adoption proceedings were regular and valid on their face; that the probate court had jurisdiction to enter the decree of adoption; that the time for appeal had expired and the decree had become final and was not subject to collateral attack; that upon the death of Maude Reeder Ames she was survived by her husband and by Mary Jane Jeffress Ames, her adopted daughter, and that she left no other child or children, natural or adopted, and no descendants of any deceased child or deceased adopted child. The trial court further found that on September 6, 1939, Mary Jane Jeffress Ames made a warranty deed, now of record, conveying a part of the real estate to Earl Ames in fee and another part to him for life, all on conditions which need not be noticed, and that on May 18, 1951, she conveyed the fee simple title to all of the real estate to him, and that he was at the commencement of this action the owner of the fee simple title to the property and in possession; that none of the plaintiffs had any right, title or interest in the real estate; that Earl Ames was entitled to a judgment quieting his title and it entered judgment accordingly.

The plaintiffs' motion for a new trial was denied and they perfected an appeal to this court.

We pause here to note a practice which we cannot approve. In their abstract appellants have specified error in six particulars.

In their brief they state that six questions are involved. As stated these questions vary from and make no reference to the errors specified in the abstract although it is obvious that some of the errors set forth in the specifications are abandoned. Notwithstanding that our rule No. 6 (3) (b) requires a statement of the questions involved, and there has been some compliance with it, (3) (d) of the rule requires argument and authorities in support of each point relied on. In the brief filed by appellants there is no separation made of the questions nor any argument and authorities on each point relied on but only one continuous and somewhat overlapping argument which may possibly refer to one or more of the questions said to be involved. This method of presentation results in a confusion which should be avoided.

We first take note of the following: Benjamin Reeder made his will on August 17, 1904, and by a codicil made June 28, 1911, he changed the executor. He died June 12, 1914. At all times just mentioned the statutes provided only for the adoption of a minor child (Laws 1903, Ch. 361; G. S. 1905, Sec. 4378, *et seq.*, and G. S. 1915, Sec. 6361, *et seq.*) and that the period of minority of a female extended to eighteen years (G. S. 1901, Sec. 4182 and G. S. 1915, Sec. 6357). By Laws 1917, Ch. 184, the period was extended for females to the age of 21 years and although that section has been amended in other particulars, that period persists to this day (G. S. 1949, 38-101).

Among others, appellants make a contention the gist of which is that while a will speaks as of the date of the testator's death, his intention must be ascertained in the light of the circumstances when he made it; that at the time the will was made adoption could not be had of a female child over eighteen years of age; that it is apparent that in construing the word "children" as used in the will, the statutes above mentioned as to age and adoption are controlling insofar as the testator's intentions are concerned, and it is not to be presumed he intended that a female nineteen years of age could be adopted so as to take under the will; that under *Smith v. Smith,* 104 Kan. 629, 180 Pac. 231, it was held the above act of 1917 extending the period of minority of females to the age of twenty-one years did not change the status of a daughter who had already reached majority under the former law; that the proceedings attached

to the answer showed that Mary Jane Jeffress was nineteen years of age when she was adopted, and in view of the law and the fact, appellants' demurrer to appellees' answer should have been sustained. Neither the petition nor the answer disclose the age of Maude Reeder. The will was made in 1904. She did not marry Earl Ames until 1913, and there is no evidence she was previously married. If we look to the date of the will as reflecting the testator's intention, we can only assume that he expected his daughter to marry and have a family for he made it clear from his will that at the end of her life estate in the real estate devised to her, all of the land "shall go to and be the absolute property of her children". He was aware of her marriage in 1913 and died in 1914 without making any change in his will. He did not limit the devise to the issue of Maude's body, but used the general term children. It must be assumed the testator knew that any child adopted by his daughter would have the same rights of inheritance from and under him as a natural child (*Riley v. Day*, 88 Kan. 503, 129 Pac. 524 [decided in 1913]). It must also be assumed that even though he knew at the time he made his will that adoptions were of minors only and that the age of minority extended only to eighteen years for females, he also knew that both statutes were subject to change at any time by the legislature. Knowing these things he provided in his will that the remainder after the death of his daughter should go to her children living at the time of her death. Insofar as Mary Jane Jeffress is concerned she was not born until after the will had been made, the testator had died, and the statute of 1917 increasing the period of minority for females to the age of 21 years had been passed. The contention of appellants cannot be sustained.

In their statement of questions involved, appellants include whether the judgment of the probate court in the adoption proceedings was void when obtained under the factual situation pleaded by them in their reply and whether the trial court erred in refusing their proof of those alleged facts. In their argument, however, there is no contention made that the probate court did not have jurisdiction of the subject matter and of the parties or that there is any defect in the proceedings before that court or in its judgment. The essence of their claim is not that the judgment is void but that they are entitled to attack it as

voidable because of extrinsic fraud practiced by the parties in obtaining it, that they may so attack it not collaterally but in an independent action, and our attention is directed to authorities that such an attack may be made either by motion in the original action or by an independent action. We agree that if the situation warrants, an independent action may be instituted and we need not discuss authorities so holding. See G. S. 1949, 60-3010, 3011 and 3013, as bearing on the proposition. Although in arguments made to the trial court on motions preceding the trial, appellants stated they were making a direct and not collateral attack on the judgment of the probate court, they now direct attention to 49 C. J. S. pg. 861 as stating, in substance, that a party or a privy to a judgment ordinarily is not permitted to impeach it collaterally on the ground it was obtained by collusion but that such an attack may be made by a stranger to the proceeding when his rights in subsequent litigation are threatened by the judgment. Ever since Kansas has been a state our code of civil procedure has contained a provision that certain of its sections with reference to revision and vacation of judgments shall apply to all courts of record of this state. See General Laws 1862, Ch. 26, Sec. 554; G. S. 1868, Ch. 80, Sec. 576; G. S. 1935, 60-3016; G. S. 1949, 60-3016. Under Art. 3, Sec. 8 of our constitution probate courts are courts of record. The sections referred to in the foregoing statutes as the same appeared in G. S. 1935 and as they now appear in G. S. 1949, are 60-3007 to 60-3015 both inclusive. As applied here any court of record has power to vacate or modify its own judgments or orders, at or after the term at which made, for fraud, practiced by the successful party, in obtaining the judgment (60-3007, *fourth*); the proceedings to vacate the judgment shall be by verified petition (60-3011), and must be commenced within two years after the judgment was rendered, with an exception not presently applicable (60-3008). It is also noted that under 60-3009 a void judgment may be vacated at any time on motion of any party or any person affected thereby.

The legislature in enacting our code of civil procedure, now appearing as G. S. 1949, Ch. 60, recognized that there must be a time fixed in which various types of action for the settlement of rights may be commenced and it did so under article 3 of the above chapter. We are not presently concerned with those

provisions. However, it also recognized that after an action had been commenced and prosecuted to judgment, there should be some provision to avoid its finality if it had been irregularly obtained and some provision fixing the conditions under which that judgment might be vacated or modified and it did so under article 30 of the above chapter, and so far as applicable here those conditions have been noted above. Examination of the record now before us discloses that the probate court had jurisdiction to render a judgment in the adoption proceeding; that its jurisdiction was properly invoked under the statutes then in force; that the necessary parties were in court; that the necessary facts were shown and that a proper judgment within the competence of the court was rendered and that no effort was ever made to have it vacated. It may not be said the judgment was void. The contention made is that the judgment is to be held for naught and vacated for alleged fraud of the successful party in obtaining it, but the record discloses that the conditions precedent to its vacation for that reason have not been met. The result is that the judgment, even if voidable for any reason, had become a finality and beyond attack before the instant action was commenced.

Even though we were to hold that at this late date the appellants could make a collateral attack on the judgment of adoption, an examination of the allegations of their reply and of their proffered evidence in support discloses that the gist thereof was that the adoption was a fraud on them. They seem to concede that had the child been of tender years there would have been no fraud, but because she was nineteen years of age, the obtaining of the adoption was fraudulent. It is not debatable but that Mr. and Mrs. Ames could have deliberately had a natural child for the very purpose of its receiving the remainder in the devised real estate if it survived its mother and that their act in so doing would not be a fraud on anyone. It is also clear Mr. and Mrs. Ames had a legal right to adopt a minor child in 1937, and that adoption having been duly had, thereafter that adopted child had the same rights of person and property as a natural child. In our opinion it may not be said that because of the adoption and that the child survived its adoptive mother and therefore succeeded to

the remainder, a fraud was perpetrated against those persons who would otherwise have received it.

Appellants' argument that their application for a change of venue because of the disqualification of the judge is confined to a statement that affidavits filed showed a relation of attorney and client between the judge and various parties to the action and that under our decision in *Jones v. Insurance Co.*, 83 Kan. 44, 109 Pac. 1077, the court erred in denying the application. In the cited case it was shown that the trial judge was a director, active in the management of and the legal adviser, receiving a salary therefor, of a bank which had a substantial interest in the outcome of the suit, and it was held that it was error to deny a motion for change of venue. The substance of the affidavits filed by appellants was that one affiant said that in 1951 she overheard the trial judge's wife say that she and her husband were good friends of Mr. and Mrs. Ames, had been in their home and visited them often. Another affiant stated that after the death of his aunt, Eva Reeder Powell, and in connection with the settlement of her estate, Judge Brenner, then in active practice of law, acted as an attorney to settle the rights of all the heirs under the will of Benjamin Reeder; another stated he was the husband of a granddaughter of Benjamin Reeder, and after the death of Mary Jane Hughes, a daughter of Benjamin Reeder, he and others consulted Brenner relative to the status of an adopted person and whether she would inherit under the will of Benjamin Reeder and were advised the adoption wouldn't work and that it would be different had Mr. and Mrs. Ames adopted a small child; he also stated Brenner represented all of the parties in settling the Powell estate, and another affiant made a similar affidavit. The appellee Ames filed a long affidavit denying that he and his wife carried on a course of visitation with the Brenners in their respective homes and setting forth his version of Brenner's acting as an attorney in the estates above mentioned. On the hearing on the motion, the trial court made an extended statement in which he said the only time he was at the Ames home was when he went there as a notary public to take an acknowledgment of a deed and that to his knowledge, Mr. and Mrs. Ames had never been in his home. He further remarked he had not prepared Benjamin Reeder's will, wasn't an attorney in the adoption proceedings, nor attorney for any of the parties when the instant suit was commenced. He discussed his connection with the Hughes and Powell

estate settlements all of which occurred over seven years before; that the present controversy involved two legal matters which the court would have to pass on and he could not be prejudiced as to a matter of law; and without further recitation of his remarks, he held he was not prejudiced and denied the application for change of venue.

Just how Judge Brenner could be prejudiced against appellants and for appellees because of the remark attributed to him about adoption does not appear. Nor does it appear that he ever represented Ames and his wife against any of the Reeder family nor any one of them against the others. The rule is that the allowance or refusal of an application for change of venue is a matter resting largely in the sound discretion of the court and its ruling will not be disturbed unless there is good ground for believing that the applicant has been prejudiced by a refusal to grant his request. In ruling on such a motion the trial judge may take into consideration his own feelings toward the applicant and refuse the application where he knows that he has no bias or prejudice against the applicant. See *Hipple v. Hipple*, 128 Kan. 406, 278 Pac. 33, and cases cited. We are convinced the trial court, under the showing made, did not abuse its discretion in denying the application.

The appellants state that one of the questions involved was that the pleadings raised an issue triable by a jury but their only comment thereon is that the court should have granted their demand for a jury. We discern no issue of fact for a jury to determine and hold the trial court did not err in denying appellants' demand.

Although in both the specification of errors and in the questions stated to be involved, it is said the trial court erred in denying the motion for a new trial, there is no argument directed to that ruling. What has been said heretofore demonstrates the trial court did not err in its ruling.

No error has been made to appear and the judgment of the trial court is affirmed.