SOLOMON, APPELLANT, *v.* CENTRAL TRUST COMPANY OF
NORTHEASTERN OHIO, N.A.; LIEBERMAN, APPELLEE.

[Cite as *Solomon v. Central Trust Co. of Northeastern
Ohio, N.A.* (1992), 63 Ohio St.3d 35.]

(No. 90–2035—Submitted November 19, 1991—Decided February 19, 1992.)

*Wickens, Herzer & Panza Co., L.P.A., Brian Jereb, Charles J. Pawlukiew-icz, Sandra Watkins Cleaver* and *Darrell W. Holland,* for appellant.

*Black, McCuskey, Souers & Arbaugh, Charles J. Tyburski, David J. Simmons* and *Richard Sternberg,* for appellee.

STEPHENSON, J.   It is the fundamental duty of the courts to ascertain the intent of a testator in making a will, including any testamentary trust provisions contained therein, and to give effect to those intentions wherever legally feasible.   *Tootle v. Tootle* (1986), 22 Ohio St.3d 244, 247, 22 OBR 420, 423, 490 N.E.2d 878, 881; *Anderson v. Gibson* (1927), 116 Ohio St. 684, 157 N.E. 377, at paragraph one of the syllabus; *Townsend's Executors v. Townsend* (1874), 25 Ohio St. 477, at paragraph one of the syllabus;  see, also, *Ohio Citizens Bank v. Mills* (1989), 45 Ohio St.3d 153, 155, 543 N.E.2d 1206, 1208 (applying this principle to *inter vivos* trusts).   Generally, the express language of the testamentary provisions themselves will indicate the testator's intent.   *Casey v. Gallagher* (1967), 11 Ohio St.2d 42, 46, 40 O.O.2d 55, 57, 227 N.E.2d 801, 806; *Findley v. Conneaut* (1945), 145 Ohio St. 480, 486, 31 O.O. 161, 164, 62 N.E.2d 318, 322; *Townsend's Executors, supra,* at paragraph two of the syllabus.

In the testamentary trust provisions at issue herein, the testator provided for distribution of trust assets to the "then living children" of William Solomon, his deceased brother.   Clearly, appellant, as a naturally born child of William Solomon, is an intended beneficiary of the trust.   However, there is nothing in the express language of the will which indicates whether the testator intended the class of "then living children" of William Solomon to include adopted children as well.

In those instances where the express language does not reveal the testator's intentions, the courts have turned to various presumptions or rules of construction.   See *Mills, supra,* 45 Ohio St.3d at 156, 543 N.E.2d at 1209 (concerning an *inter vivos* trust).   One such presumption is the "stranger to the adoption" rule, which, historically, held that where a testator was a stranger to the adoption of another (*e.g.,* the adoption occurs subsequent to

the testator's death), it was presumed that he did not intend for the adopted child to be included within the designated class unless a contrary intent clearly appeared. See, *e.g., Third Natl. Bank & Trust Co. v. Davidson* (1952), 157 Ohio St. 355, 362, 47 O.O. 257, 260, 105 N.E.2d 573, 577; *Albright v. Albright* (1927), 116 Ohio St. 668, 680, 157 N.E. 760, 764; see, also, *Mills, supra,* 45 Ohio St.3d at 156, 543 N.E.2d at 1209 (concerning an *inter vivos* trust).

Recently, however, this court held that the common-law "stranger to the adoption" rule was abrogated as to wills, including trusts established therein, as early as August 28, 1951, when G.C. 8004–13 became effective.[1] *Central Trust Co. of Northern Ohio, N.A. v. Smith* (1990), 50 Ohio St.3d 133, 553 N.E.2d 265, at paragraph two of the syllabus. Thus, this court held as follows in paragraph three of the syllabus:

"Where there is no specific language within the trust provisions of a will prohibiting an adopted child from taking under the trust, a child adopted by the testator's son after the testator's death may take under the terms of the instrument as a member of the class designated 'the children of [my son], whether now living or born hereafter.'"

This principle from *Smith* would appear to be dispositive of the cause *sub judice* and, there being no specific language in the will prohibiting an adopted child from taking thereunder, would require inclusion of appellee in the class of "then living children" of William Solomon for purpose of inheriting under the trust. Appellant advances several arguments, however, to the effect that *Smith* is not dispositive because it involved the adoption of a *minor* child, whereas the cause *sub judice* involves an adult adoptee and the "stranger to the adoption" rule would have remained in effect with respect to adult adoptees until 1977, fourteen years after the testator executed his will. Thus, appellant urges us to find that the testator intended to exclude appellee from inheriting under the trust because he was a stranger to her later adult adoption. For the following reasons, we disagree.

In 1976, the Ohio General Assembly enacted a new R.C. 3107.02, which provided, in pertinent part, that an adult may be adopted if, among other

---

1. G.C. 8004–13 provided, in pertinent part, as follows:

    "* * * For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents; provided:

    "(A) Such adopted child shall not be capable of inheriting or succeeding to property expressly limited to heirs of the body of the adopting parent or parents[.]" Am.S.B. No. 65 (124 Ohio Laws 178, 193–194).

things,[2] the adult had established during his minority a child-foster parent or child-stepparent relationship with the adoptor. Former R.C. 3107.02(B)(3), Am.Sub.H.B. No. 156 (136 Ohio Laws, Part I, 1839, 1841). Prior to such time, the law had provided only for the adoption of a child under eighteen years of age. See former R.C. 3107.02, 1953 H.B. No. 1; former R.C. 3107.01, Am.Sub.S.B. No. 1 (135 Ohio Laws, Part I, 7, 19); see, also, *Barrett v. Delmore* (1944), 143 Ohio St. 203, 28 O.O. 133, 54 N.E.2d 789.[3]

Appellant is correct that, in construing the words used by a testator, we must presume that the testator was acquainted with these statutes, their judicial interpretation and the effect which they would have on his estate. See *Flynn v. Bredbeck* (1946), 147 Ohio St. 49, 33 O.O. 243, 68 N.E.2d 75, at paragraph one of the syllabus; see, also, *Mills, supra*, 45 Ohio St.3d at 156, 543 N.E.2d at 1209 (applying this presumption to *inter vivos* trusts). However, it does not necessarily follow that we must presume the testator herein intended to exclude adult adoptees from inheriting under the trust merely because the law did not allow for such an adoption at that particular time.

Rather, we must also presume that a testator is aware that the laws that affect his estate are subject to change. See *Hummel v. Davis* (App.1936), 22 Ohio Law Abs. 49, 52; see, also, *Smith v. Hunter* (1912), 86 Ohio St. 106, 116, 99 N.E. 91, 93.[4] Although Ohio law did not allow adult adoptions at the time the testator executed his will, we note that other jurisdictions did allow such adoptions either explicitly by statute or by judicial interpretation of pertinent statutes. See, generally, Annotation (1968), 21 A.L.R.3d 1012, 1017–1021, Section 3; Annotation (1933), 83 A.L.R. 1395, 1396. It would be reasonable for the testator to have presumed that Ohio could, eventually, join the other jurisdictions in allowing such adoptions to occur. A testator who creates a trust that provides for termination at the death of a life beneficiary and distribution of trust assets to the "then living children" of the beneficiary is presumed to know that the legislative definition of children will be determined at the time the class closes and that the definition may include adult adoptees

---

2. This statute also required that the adoption petition be filed within three years of the date the person to be adopted became an adult. This time limit was removed, before appellee's adoption, by H.B. No. 71 (140 Ohio Laws, Part I, 1764).

3. A "child" is now defined as merely a "son or daughter" without any reference to an age limit. R.C. 3107.01(A).

4. For the application of this presumption in other jurisdictions, see, *e.g.*, *In re Trust under Will of Davidson* (1947), 223 Minn. 268, 273–274, 26 N.W.2d 223, 226; *Bartlett v. Ligon* (1920), 135 Md. 620, 626–627, 109 A. 473, 476; *In re Kohler's Estate* (1901), 199 Pa. 455, 457, 49 A. 286, 288.

even though adult adoptions were not authorized at the time the trust was created.

Moreover, in that appellee had, during her minority, a relationship as the foster child or stepchild of William Solomon,[5] it would also be logical to presume the testator was aware that, someday, appellee might be adopted by his brother. In any event, we must also presume that the testator was aware of then existing law which would have allowed William Solomon to adopt any minor and, thereby, bestow upon it the same inheritance rights possessed by a natural child.

Knowing all of this, the testator, nevertheless, made no provision to exclude adopted children from taking under the testamentary trust even though the law permitted him to exclude all those who were not "heirs of the body" of William Solomon. Accordingly, we find no merit to appellant's argument that the testator intended to bar persons adopted as adults from taking under the trust and we extend the holding in *Smith* to those instances involving adult adoptees. We hold that an adult who is adopted pursuant to R.C. 3107.-02(B)(3), and thus is a "child" by definition under R.C. 3107.01(A), has the same status and the same rights as a person who is a minor at the time of adoption. Therefore, where there is no specific language in a trust provision of a will prohibiting an adopted child from taking under the trust, a child adopted by a trust beneficiary, after the testator's death, may take under the terms of the instrument as a member of the class of "then living children" of the beneficiary, even though the adoptee was an adult at the time of his adoption.

A similar result was reached by the Supreme Court of Kansas in *Meek v. Ames* (1955), 177 Kan. 565, 280 P.2d 957, in which a decedent left a will devising a life estate in land to his daughter subject to a prior life estate in his wife. The will provided that, upon the daughter's death, the land would become the absolute property of the daughter's children. At the time the will was executed and, at decedent's death, Kansas law allowed only for the adoption of children below the age of majority, which, for females, was then eighteen years of age. Three years after his death, the age of majority for females was extended to twenty-one. Some twenty years after that, the daughter adopted a nineteen-year-old girl. On appeal, it was argued that the decedent did not intend to allow the adoption of a nineteen-year-old at the time of his death since, at that time, it was not legally possible to adopt a person of that age. The court rejected this argument and reasoned that the decedent

5. The appellant has not challenged the validity of the adoption on the basis that this relationship did not exist. We assume that it did exist as required by statute.

was presumed to know that such statutes could be changed and, in any event, he did not limit the devise to the issue of his daughter's body, but used the general term "children." *Id.*, 177 Kan. at 570–571, 280 P.2d at 962; see, also, *In re Estate of Fortney* (1980), 5 Kan.App.2d 14, 18–19, 611 P.2d 599, 603.

Our decision herein is also supported by sound policy. The adoption of an adult who is neither permanently disabled nor mentally retarded can occur only if a child-foster parent or child-stepparent relationship had been established during the minority of the adult to be adopted. R.C. 3107.02(B)(3). Thus, the purpose of this statute appears to be to allow for adoptions which, for one reason or another, were not made during the child's minority. See *In re Adoption of Huitzil* (1985), 29 Ohio App.3d 222, 225, 29 OBR 267, 270, 504 N.E.2d 1173, 1176. In cases such as the one before us, a long-established child-stepparent relationship is given the legal sanction of adoption and the adult adoptee is merely placed in the same position that she would have been in had the proceedings been consummated before she reached the age of majority. Thus, we can perceive no reason to discriminate between a person adopted as a minor and a person adopted as an adult for these purposes. If the General Assembly had intended a distinction between the rights of a minor adoptee and an adult adoptee, then presumably appropriate statutory language would have been utilized to reflect such an intention.

On this same basis, we also reject appellant's argument that appellee's adoption was a mere subterfuge to gain a portion of the trust and that it should be disallowed or. it will provide an "open invitation to 'treasure hunts.'" *In re Estate of Griswold* (1976), 140 N.J.Super. 35, 55, 354 A.2d 717, 728. Appellant cites cases from other states that have held that the policy of placing an adopted child on the same level as a natural child will not apply where adults are adopted merely to create an heir or to give an heir an interest in property. It should first be noted that, while these cases are instructive, no court in this state is bound by a decision of another state court applying that state's own law. See *Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 401, 135 N.E. 669, 673; see, also, *Shuman v. Schick* (1953), 95 Ohio App. 413, 415, 53 O.O. 441, 442, 120 N.E.2d 330, 332.

More important, however, our review of these cases does not reveal any previous child-foster parent or child-stepparent relationship established during the adoptees' minority. See, *e.g., Cross v. Cross* (1988), 177 Ill.App.3d 588, 591, 126 Ill.Dec. 801, 803–804, 532 N.E.2d 486, 488–489 (a forty-nine-year-old individual adopts a thirty-six-year-old person and the two had lived together for only seventeen years); *In re Estate of Griswold, supra* (adoptee was thirty-one years old when the stepparent relationship began); *Schaefer v. Merchants Natl. Bank* (Iowa 1968), 160 N.W.2d 318, 320 (no apparent

relationship during minority of adoptee); *In re Estate of Comly* (1966), 90 N.J.Super. 498, 502–503, 218 A.2d 175, 178 (no mention of child-foster parent or child-stepparent relationship). The factual posture and reasoning in these cases are in accordance with those of other jurisdictions which prohibit adoptions, in unusual circumstances, where it would defeat the intent of the testator. See, *e.g., Minary v. Citizens Fidelity Bank & Trust Co.* (Ky.App. 1967), 419 S.W.2d 340, 344 (wife adopted by husband).

As stated previously, however, Ohio law allows for an adult adoption only if there was a child-foster parent or child-stepparent relationship established during the minority of the person adopted. Appellee had just such a relationship with William Solomon and, therefore, this case is clearly distinguishable from those cited by appellant.

For these reasons, we are persuaded that the Court of Appeals for Stark County properly reversed the judgment of the probate court. Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.

EARL E. STEPHENSON, J., of the Fourth Appellate District, sitting for HOLMES, J.

WRIGHT, J., dissenting. I must respectfully dissent because I cannot accept a rule of law that implies a testator's intent from legislation that did not exist when the will was executed or at the time of his death.

"The court's function in construing a will, including its trust provisions, is to determine and apply the testator's intent as expressed in the language of the whole will, and read in light of the applicable law, and circumstances surrounding the will's execution." (Citations omitted.) *Central Trust Co. of Northern Ohio, N.A. v. Smith* (1990), 50 Ohio St.3d 133, 136, 553 N.E.2d 265, 269. In *Smith, supra,* this court held that the common-law rule of construction referred to as the "stranger to the adoption" rule was abrogated as to testamentary trusts as of August 28, 1951, the effective date of G.C. 8004–13, 124 Ohio Laws 178, 193 (later codified as R.C. 3107.13; see current R.C. 3107.15 for analogous provisions). G.C. 8004–13 provided that a legally adopted *child* has the same status and rights as a naturally born *child* for purposes of inheritance. In *Smith,* the disputed beneficiary was adopted when he was thirteen years old. *Id.* at 134, 553 N.E.2d at 268.

I think it obvious that the "stranger to the adoption" rule is not abrogated as to adopted *adults* just because it is abrogated as to adopted *children*. In

*Smith,* the court reconstructed the testatrix's intent by presuming that the testatrix was aware of the existence of an applicable statute. This is, perhaps, well and good.

Probate courts commonly examine the statutes that exist on two different dates. First, the existing statutes are relevant to determine the testator's intent on the date that the will was executed. Second, courts sometimes also consider the statutes in effect as of the date of death, on the assumption that the testator may well have acquiesced to later changes in the law because he did not change his will. G.C. 8004–13 referred to the rights of an adopted *child* and the analogous statute (R.C. 3107.13, now codified as 3107.15) was not changed to refer to an adopted *person* until January 1, 1977 (136 Ohio Laws, Part I, 1839, 1851), for the simple reason that an adult could not be adopted in this state until that date. See former R.C. 3107.02, 1953 H.B. No. 1; former R.C. 3107.01, Am.Sub.S.B. No. 1 (135 Ohio Laws, Part I, 7, 19); see, also, *Barrett v. Delmore* (1944), 143 Ohio St. 203, 28 O.O. 133, 54 N.E.2d 789.

The majority simply fails to explain how the testator can be presumed to have intended *"children"* to include an adopted *"adult"* on the basis of a statute that was not enacted until fourteen years *after* the execution of his will and ten years *after* his death. The opinion states that "we must also presume that a testator is aware that the laws that affect his estate are subject to change" and then relies on the fact that the testator must have been aware that a minority of other states (Ohio not included) allowed adult adoption at that time. I submit that under this rationale a testamentary trust is subject to every change of law made after the death of the testator. This decision requires a testator to foresee every conceivable change in the law to prevent the legislature from amending his will by statute after his death.

The majority also implies that the testator may have intended to include Rochelle Lieberman as one of his brother's children because he was aware that his brother had a minor stepchild living with him and may have assumed that the child would eventually be adopted. However, Lieberman was born on May 18, 1941, which means that she was twenty-one years old when the will was executed on February 25, 1963. I would observe that *adult* adoption was not even permitted in Ohio *on that date or on the date of the testator's death.* Under the law that existed at that time, the testator's brother could never legally adopt Lieberman. For purposes of inheritance, "children" were clearly defined as adopted or natural born children. Given the existing law, the testator must be presumed to have been aware that Lieberman would not and could not share in this trust as written.

For the reasons stated, I cannot join the result or the reasoning promulgated today.