[Cite as *In re Adoption of T.N.N.*, 2021-Ohio-4111.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| THE ADOPTION OF T.N.N. | : | CASE NO. CA2021-09-013 |
| | : | O P I N I O N<br>11/22/2021 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 20215015

Stanley K. Purdy, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Dorathy Saylor ("Saylor"), appeals the decision of the Brown County Court of Common Pleas, Probate Division, denying her petition for adoption of her adult granddaughter, Tiffanie Nicole Nay fka Saylor ("Nay"). For the reasons outlined below, we reverse the probate court's decision denying Saylor's petition for adoption and remand this matter to the probate court for further proceedings consistent with this opinion.

{¶ 2} On July 16, 2021, Saylor, who the record indicates is 82 years old, filed a

petition for adoption of her adult granddaughter, Nay, born on December 24, 1985. Saylor's petition for adoption was filed with the trial court in accordance with R.C. 3107.02(B). Pursuant to that statute, an adult may be adopted under any of the following five conditions:

(1) If the adult is totally or permanently disabled;

(2) If the adult is determined to be a person with an intellectual disability;

(3) If the adult had established a child-foster caregiver, kinship caregiver, or child-stepparent relationship with the petitioners as a minor, and the adult consents to the adoption;[1]

(4) If the adult was, at the time of the adult's eighteenth birthday, in the permanent custody of or in a planned permanent living arrangement with a public children services agency or a private child placing agency, and the adult consents to the adoption;

(5) If the adult is the child of the spouse of the petitioner, and the adult consents to the adoption.

{¶ 3} The record indicates that Saylor filed her petition for adoption of Nay based on the condition set forth above in R.C. 3107.02(B)(3).

{¶ 4} On August 11, 2021, the probate court held a hearing on Saylor's petition for adoption of Nay. During this hearing, it was revealed that Saylor's son, Timothy, is Nay's father, thereby rendering Saylor as Nay's paternal grandmother. It was also revealed that Nay was raised by Saylor, as well as Saylor's husband, Edward, Nay's paternal grandfather, on the Saylor family farm located in Hamersville, Brown County, Ohio. It was further revealed that Nay's father and Nay's mother, Tina Smith, were married when Nay was born, but that they subsequently divorced when Nay was four or five years old. It was additionally revealed that Nay's father, Timothy, moved away from the Saylor family farm when Nay was nine years old after he married Nay's stepmother.

---

1. Pursuant to R.C. 3107.02(F), the term "kinship caregiver" has the same meaning as in R.C. 5101.85, which defines the term to include grandparents. R.C. 5101.85(A)(1).

- 2 -

{¶ 5} Nay testified that she did not have a "normal father-daughter relationship" with her father growing up, but that "there are no negative feelings" between the two of them and that "he is there for [her] if [she] ever need[ed] him." Nay instead testified that she and her father were raised by her paternal grandparents, Saylor and Saylor's husband, Edward, "more as brother and sister." Nay, who the record indicates is now a happily married mother of two children ages 13 and 16, testified that this was true even though her father, Timothy, retained custody of her while she was growing up. Nay also testified that she "[p]retty much" did not have a relationship with her mother when she was younger and that "[i]t was a very toxic relationship when [they] did." Nay did note, however, that her mother had paid child support to her father, which her father then "put into a spare bank account for [her] being he wasn't the one that was providing care for [her]." Nay testified that this money was then given to her when she turned 18 to pay for her college tuition.

{¶ 6} Continuing, when asked by the probate court why she wanted Saylor to adopt her, Nay testified:

> More because it's just something that has been that way my entire life. We don't have anything officially saying it, but it's the relationship that we've always had. Every doctor's appointment I've ever been to as a child, every sporting event, she was the one that was there for every single thing.

{¶ 7} Next, when asked by the probate court "[w]hat positive can come from this adoption legally," Nay testified:

> Legally, it's a peace of mind for me. Just to have that she is listed as my mother is – as dumb as it might sound being I'm an adult, I feel like every child should have a mother and a father that's listed.

{¶ 8} Nay also testified that, "[l]egally, I know it doesn't really change anything other than the fact that I officially have something saying she is my mother."

{¶ 9} Further explaining why she wanted to be adopted by Saylor, Nay testified that

she had a "health scare" a few years prior where she was diagnosed with cancer that made her "nervous" to think about what would happen to her two children if she and her husband were to pass away. Specifically, as Nay testified:

> I understand in the case of my children, I have a husband who is a very good father and my children would go with him, but it put something in me to make me realize if something happened to the both of us, as much as I know I can get documentation to say that my biological mother and father have no rights to my children, it made me nervous to think if something happened to us she has as much right to my children as anybody else would because she is * * * biologically their grandmother.

{¶ 10} To this, the probate court addressed Nay and stated, "yeah," while that may be true, Nay nevertheless had "the ability to give directives" that would be "stronger than anything" that would come from granting Saylor's petition for adoption. The probate court also notified Nay that, "[t]he adoption here today wouldn't minimize even that claim she could make," to which Nay responded, "Correct. I understand."

{¶ 11} Saylor testified that while Nay was already her daughter at heart, she wanted to officially adopt Nay so that Nay would "legally" be her daughter on "[a]doption paper." Saylor and the probate court then had the following exchange:

> THE COURT: Well, what – I –I – and I'm not telling you guys I'm not going to do this, but I – I need to make sure we're understanding each other. I hear a lot of people talk about "on paper," and I want to know what the paper means. Do you mean like, if you would die tomorrow where your assets could go to, because –
>
> MS. SAYLOR: No.
>
> THE COURT: -- that can be taken care of in 10 minutes in a lawyer's office that she gets everything. If you want her to be the one to make the decisions when you're lying in your death bed, that can be done in 5 minutes in a lawyer's office.
>
> MS. SAYLOR: I understand all of that. I understand that.

{¶ 12} Concluding this exchange, the probate court stated:

- 4 -

I'm sympathetic to a family dynamic. I – I – the only thing I'm thinking here is whether this is the best way for you to do it, and I'm not saying it's not. Please don't over read my comments here. And I'm not pre – prejudicing this case in any way.

{¶ 13} The probate court then advised Saylor and Nay that it would take the matter under advisement and provide a written decision on the matter in due course.

{¶ 14} On August 23, 2021, the probate court issued a decision denying Saylor's petition for adoption of Nay. In so holding, the probate court stated, in pertinent part, the following:

> The Court must balance a number of factors in considering an Adult Adoption of this nature. The Court finds that this type of restructure of a family tree should not be done without a clear and positive objective. This adoption seems to be more about the removal of Nay's Mother than the true need for an adoption. The connection between the Grandmother and Granddaughter cannot be enhanced by any document of this Court.

{¶ 15} On September 7, 2021, Saylor filed a motion for a new trial pursuant to Civ.R. 59(A). Shortly thereafter, on September 16, 2021, Saylor filed a notice of appeal from the probate court's decision denying her petition for adoption of Nay. To allow her appeal to move forward, Saylor subsequently moved to withdraw her motion for a new trial on November 10, 2021. The probate court granted Saylor's motion to withdraw her motion for a new trial later that same day "in order to clear obstacles for appeal." Saylor's appeal, now properly before this court, raises three assignments of error for this court's review. For ease of discussion, and because we find them to be dispositive, we will address Saylor's first and second assignments of error together.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE JUDGMENT IS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE JUDGMENT IS CONTRARY TO LAW.

{¶ 20} In her first and second assignments of error, Saylor argues the probate court erred by denying her petition for adoption of Nay. We agree.

{¶ 21} "The right of adoption did not exist at common law and is statutory in nature." *In re Adoption of Huitzil*, 29 Ohio App.3d 222, 223 (12th Dist.1985). Because of this, the General Assembly enacted R.C. 3107.02 to allow adult adoptions to take place in Ohio. *Solomon v. Cent. Trust Co., N.A.*, 63 Ohio St.3d 35, 38 (1992). However, although statutorily permissible, Ohio does not favor "unfettered" adult adoptions. *Fifth Third Bank v. Harris*, 127 Ohio Misc.2d 1, 2003-Ohio-7361, ¶ 19. That is to say, "the legislature clearly did not intend that any adult be able to adopt any other adult." *In re Adoption of Huitzil* at 225. Rather, "because of certain attributes that such relationships are likely to spawn," Ohio allows for an adult adoption to take place only where one the five conditions set forth in R.C. 3107.02(B)(1) thru (5) are met. *In re Huskins*, 89 Ohio Misc.2d 13, 15 (P.C.1997). This includes, as noted above, the condition where "the adult had established a * * * kinship caregiver * * * relationship with the petitioner[] as a minor, and the adult consents to the adoption[.]" R.C. 3107.02(B)(3). "[A]n adult who is adopted pursuant to R.C. 3107.02(B)(3), and thus is a "child" by definition under R.C. 3107.01(A), has the same status and the same rights as a person who is a minor at the time of adoption." *Solomon v. Cent. Trust Co., N.A.,* 63 Ohio St.3d 35, 40 (1992).

{¶ 22} In this case, the probate court denied Saylor's petition for adoption of Nay based upon its finding "this type of restructure of a family tree should not be done without a clear and positive objective." The probate court also found Saylor's petition for adoption should be denied because Saylor's petition "seems to be more about the removal of Nay's Mother than the true need for an adoption." However, despite the probate court's findings, the plain language set forth in the statute authorizing adult adoptions, R.C. 3107.02(B), is

not concerned with the underlying reasoning for why a petition for adoption of an adult may have been filed by the petitioner(s).  There is also no requirement that the probate court make a best interest finding prior to issuing a decision to grant or deny a petition for adoption of an adult filed pursuant to R.C. 3107.02(B).  The only requirement that must be established before the probate court can grant a petition for adoption of an adult is whether any one of the five conditions set forth in R.C. 3107.02(B)(1) thru (5) have been met, nothing more, nothing less.

{¶ 23} "Thus, if the requirements of an applicable statute are not met, no adoption is possible."  *In re Adoption of Huitzil*, 29 Ohio App.3d at 223.  But, "to deny a petition * * * based on a situation analogous to one permitted by statute is to elevate form over substance, and thus violate the spirit of this particular body of law."  *In re Huskins*, 89 Ohio Misc.2d at 15.  That is certainly the case here as it relates to the condition set forth in R.C. 3107.02(B)(3).  Therefore, given the facts of this case, we find the probate court erred by denying Saylor's petition for adoption of Nay for it is clear that Nay had established a kinship caregiver relationship with Saylor as a minor, and that Nay consented to being adopted by Saylor, thereby satisfying the only two requirements for an adult adoption to be had under R.C. 3107.02(B)(3).  Accordingly, for the reasons outlined above, Saylor's first and second assignments of error have merit and are sustained.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE TRIAL COURT ABUSED ITS DESCRETION (sic) IN NOT GRANTING A NEW TRIAL.

{¶ 26} In her third assignment of error, Saylor argues the probate court erred by not granting her motion for a new trial.  However, as noted above, Saylor moved the probate court to withdraw her motion for a new trial from the probate court's consideration on November 10, 2021.  The probate court granted Saylor's motion later that same day "in

order to clear obstacles for appeal." Therefore, as Saylor's motion for a new trial has since been withdrawn so as to allow this appeal to move forward, Saylor's third assignment of error alleging the probate court erred by not granting her motion for a new trial is dismissed as moot.

{¶ 27} Judgment reversed and remanded.

M. POWELL, P.J., and HENDRICKSON, J., concur.