[Cite as *Keybank Natl. Assn. v. Firestone*, 2019-Ohio-2910.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KEYBANK NATIONAL ASSOCIATION, :

    Plaintiff-Appellee, :

                             No. 107307

    v. :

JEFFREY B. FIRESTONE, ET AL., :

    Defendants. :

[Appeal by Cindy Firestone] :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2017 ADV 225027

---

### *Appearances:*

Ulmer & Berne, L.L.P., James A. Goldsmith, and Daniela Paez Paredes, *for appellee* Keybank National Association.

Thompson Hine, L.L.P., Mark A. Conway, Terry W. Posey, Jr., and Christine M. Haaker, *for appellees* Jeffrey B. Firestone and Amy Firestone.

Deborah Lynn Firestone Boylen, *pro se.*

Reminger Co., L.P.A., Adam M. Fried, and Clifford C. Masch, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1}   Appellant, Cindy Firestone ("Cindy"), appeals from the trial court's determination that she is not a beneficiary under a trust executed by her adopted father in July 1960.  She raises the following assignment of error for review:

> Pursuant to the relevant governing Ohio law in existence at the time the 1960 Trust Agreement was executed, Cindy Firestone qualifies as a beneficiary under the trust.

{¶ 2}   After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3}   On July 5, 1960, D. Morgan Firestone (the "Settlor") and his former wife, Nancy Morgan Firestone, entered into a separation agreement as part of their divorce.  Relevant to this appeal, the separation agreement governed the details of the property settlement, alimony, and the custody and care of their children.  David M. Firestone, Amy M. Firestone, and Jeffrey B. Firestone are the biological children of the Settlor and Nancy.  Paragraph 7(a) of the separation agreement provided for the creation and funding of an irrevocable trust (the "Trust"), which was attached as an exhibit to the separation agreement.  Under the terms of the Trust, Nancy was entitled to the Trust income during her lifetime.

{¶ 4}   Section 1 of the Trust outlined how the remaining proceeds of the Trust were to be distributed upon the death of Nancy, stating:

> Upon [Nancy's] death, the trustee shall distribute the then principal of the [T]rust estate to the then living descendants of the settlor in equal shares per stirpes.  The term "descendants of the settlor" shall include

Amy Morgan Firestone, David Morgan Firestone, and Jeffrey Bryan Firestone, and any child or more remote descendant of the settlor who shall be born after the date of this instrument.

{¶ 5} In March 1974, the Settlor remarried and, in June 1983, he adopted his wife's two adult daughters, Deborah Lynn Boylen Firestone, then age 23, and appellant, Cindy Firestone, then age 21.

{¶ 6} Upon the death of Nancy in May 2016, KeyBank National Association, as Trustee for the Trust, filed a complaint for declaratory judgment "to resolve any uncertainty with respect to the distribution of the Trust assets." Specifically, KeyBank requested "a declaration from the court as to whether Defendants Cindy Firestone and Deborah Lynn Boylen Firestone are excluded as beneficiaries of the trust, and a determination as to whether they are entitled to receive a distribution of Trust assets under the terms of the Trust."

{¶ 7} On November 3, 2017, Cindy filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Cindy asserted that she is a beneficiary pursuant to the plain language of the Trust and by operation of R.C. 3107.15(A)(2). She further argued that while R.C. 3107.15(A)(2) applies retroactively to include her as a beneficiary, R.C. 3107.15(A)(3), which by its language is also retroactive and would disqualify her, "unconstitutionally imposes burdens and obligations on transactions that transpired before the effective date of the amended statutory provision."

{¶ 8} On December 11, 2017, Amy and Jeffrey[1] filed a cross-motion for judgment on the pleadings, arguing (1) the words of the Trust must be interpreted according to their legal effect and meaning in 1960 when the Trust was executed; (2) the legal effect of the term "child" in 1960 was only to include blood relatives; (3) in 1960, Ohio law did not permit adult adoptions, and, therefore, (4) the Settlor and Nancy could not have intended to include an adult adoptee as a member of the class of children.

{¶ 9} In May 2018, the trial court granted the cross-motion for judgment on the pleadings in favor of Jeffrey and Amy, finding that, in the absence of an express intent to include adopted persons, Deborah and Cindy are not beneficiaries of the Trust. The court further granted the complaint for declaratory judgment, finding that R.C. 3107.15(A)(3) is constitutional as applied to the Trust and operates to exclude Cindy and Deborah from status as beneficiaries of the Trust.

{¶ 10} Cindy now appeals the trial court's judgment.

## II. Law and Analysis

{¶ 11} In her sole assignment of error, Cindy argues the trial court erred in excluding her as a beneficiary under the Trust.

{¶ 12} We review a ruling on a motion for judgment on the pleadings de novo. *Matthews v. United States Bank Natl. Assn.*, 8th Dist. Cuyahoga No. 105315, 2017 Ohio-7079, ¶ 8. Civ.R. 12(C) provides that a party may move for judgment on

---

[1] David M. Firestone passed away in September 2013.

the pleadings after the pleadings are closed but within such time as to not delay trial. *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092, ¶ 16 (8th Dist.). A motion for judgment on the pleadings raises only questions of law, and the court may look to only the allegations in the pleadings in deciding the motion. *Id.* The pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, indulging every reasonable inference in favor of the party against whom the motion is made. *Id.*, citing *Case W. Res. Univ. v. Friedman*, 33 Ohio App.3d 347, 515 N.E.2d 1004 (8th Dist.1986).

> In order to be entitled to a dismissal under Civ.R. 12(C), it must appear beyond doubt that [the nonmovant] can prove no set of facts warranting the requested relief, after construing all material factual allegations in the complaint and all reasonable inferences therefrom in [the nonmovant's] favor.

*Matthews* at ¶ 8, quoting *State ex rel. Toledo v. Lucas Cty. Bd. of Elections*, 95 Ohio St.3d 73, 74, 2002-Ohio-1383, 765 N.E.2d 854.

{¶ 13} On appeal, Cindy argues the trial court erred in finding that "R.C. 3107.15 is determinative of the issue in this case." She summarizes her position as follows:

> [T]he trial court failed to consider the ramifications that arise by virtue of the common law stranger to the adoption rule in effect when the 1960 Trust was drafted. The imposition of the presumption that settlor Morgan Firestone intended to include all persons adopted by him in a beneficiary class of a "child or more remote descendant born after the date of the agreement" leads to the inescapable conclusion that he intended to include his adopted daughter Cindy Firestone as the trust contains no language indicating a contrary position. * * * Moreover, this court must also conclude that the retroactive application of R.C. 3107.15(A)(3) under the facts of this case unconstitutionally imposes

restrictions on [the settlor's] right to distribute and protect his property as is his substantive right.

{¶ 14} For the purposes of this appeal, we separately assess the Settlor's intent and the application of R.C. 3107.15.

## A. The Settlor's Intent

{¶ 15} In general, a "trust" is defined as "'the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another.'" *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 603, 716 N.E.2d 189 (1999), quoting *Ulmer v. Fulton,* 129 Ohio St. 323, 339, 195 N.E. 557 (1935). An inter vivos trust is a trust that is created and becomes effective during the lifetime of the settlor. *Id.*, citing *Hageman v. Cleveland Trust Co.*, 41 Ohio App.2d 160, 161, 324 N.E.2d 594 (8th Dist.1974), *rev'd on other grounds*, 45 Ohio St.2d 178, 343 N.E.2d 121 (1976). *See also Black's Law Dictionary* 821 (6th Ed.1990). This is in contrast to a testamentary trust, "'which takes effect at the death of settlor or testator.'" *In re Estate of Scanlon*, 8th Dist. Cuyahoga No. 95264, 2011-Ohio-1097, ¶ 19, quoting *Black's Law Dictionary*, 568-69 (6th Ed.1990).

{¶ 16} As a general proposition, the parameters of a trustee's authority are controlled by the specific terms of the trust. *In re Trust U/W of Brooke*, 82 Ohio St.3d 553, 557, 697 N.E.2d 191 (1998). Interpreting a trust is akin to interpreting a contract. *Millstein v. Millstein*, 8th Dist. Cuyahoga No. 106270, 2018-Ohio-1204, ¶ 14. With both, the role of courts is "to ascertain and give effect to the intent of the parties." *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶

14, citing *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452. The construction of a written contract is a matter of law that we review de novo. *Id.* at ¶ 23. "The same is true of the construction of a written trust." *Id.* at ¶ 14.

{¶ 17} In interpreting the terms of a trust, a settlor's intent is determined by considering the language used in the trust, reading all the provisions of the trust together and "in light of the applicable law, and circumstances surrounding the [trust's] execution." *Cent. Trust Co. of N. Ohio, N.A. v. Smith*, 50 Ohio St.3d 133, 553 N.E.2d 265 (1990); *Mumma v. Huntington Natl. Bank of Columbus*, 9 Ohio App.2d 166, 223 N.E.2d 621 (10th Dist.1967). Generally, when the language of the instrument is not ambiguous, a court may ascertain the settlor's intent from the express terms of the trust itself. *In re Estate of Davis*, 109 Ohio App.3d 181, 671 N.E.2d 1302 (12th Dist.1996). A court presumes the settlor used the words in the trust according to their common, ordinary meaning. *In re Trust U/W of Brooke* at 557.

{¶ 18} As stated, in this case the Settlor provided for the distribution of the Trust income to Nancy during her lifetime. Upon the death of Nancy, Section 1 of the irrevocable Trust directed the trustee to act as follows:

> Upon [Nancy's] death, the trustee shall distribute the then principal of the trust estate to the then living descendants of the settlor in equal shares per stirpes. The term "descendants of the settlor" shall include Amy Morgan Firestone, David Morgan Firestone, and Jeffrey Bryan Firestone, and any child or more remote descendant of the settlor who shall be born after the date of this instrument.

{¶ 19} Under the terms of the Trust, the biological children of the Settlor and Nancy were expressly named as beneficiaries. In addition, the Trust provided for

equal distribution to "any child or remote descendant of the Settlor" who may be born at some time in the future. Thus, the Trust contemplated future children or remote descendants of the Settlor. Relevant to this appeal, however, there is no express language in the Trust indicating whether the Settlor intended to include adult adoptees in the class of "child[ren] or more remote descendant[s] of the settlor who shall be born after the date of this instrument."

{¶ 20} Where the express language does not reveal the grantor's intent, the court must ascertain that intent through the use of various presumptions, rules of construction, and a review of applicable statutes and case law. *See Ohio Citizens Bank v. Mills*, 45 Ohio St.3d 153, 155-156, 543 N.E.2d 1206 (1989), *superseded by statute on other grounds*; *Solomon v. Cent. Trust Co. of N.E. Ohio, N.A.*, 63 Ohio St.3d 35, 37, 584 N.E.2d 1185 (1992); 76 American Jurisprudence 2d, Trusts, Section 31, citing *Fifth Third Bank v. Harris*, 127 Ohio Misc.2d 1, 2003-Ohio-7361, 804 N.E.2d 1044 (Prob. Ct. 2003). Specifically, when construing an inter vivos trust, a court should determine the intent of the settlor in light of the law existing at the time of the creation of the trust, since "an inter vivos trust speaks from the date of its creation — not the date upon which the assets are to be distributed." *Mills* at 156, citing *First Natl. Bank v. Tenney*, 165 Ohio St. 513, 138 N.E.2d 15 (1956), paragraph one of the syllabus; *see also Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 8 ("[A] trust is construed according to the law in effect at the time it was created.").

{¶ 21} Furthermore, we must presume that "the settlor was acquainted with the relevant then-existing statutes, their judicial interpretation, and the effect they may have had upon the distribution of her trust estate." *Mills* at 156; *Cent. Trust Co. v. Bovey*, 25 Ohio St.2d 187, 190, 267 N.E.2d 427 (1971). *See also Gottesman v. Estate of Gottesman*, 8th Dist. Cuyahoga No. 81265, 2002-Ohio-6058, ¶ 14, citing *Flynn v. Bredbeck*, 147 Ohio St. 49, 54, 68 N.E.2d 75 (1946). This presumption is of particular importance in this case because the Trust is an irrevocable trust that was executed as part of a divorce. Thus, the Settlor had no right to amend its terms after it was created.

{¶ 22} At the time the Trust was created by the Settlor in this case, the applicable statute governing adoptions was former Ohio Revised Code Chapter 3107, which conferred upon a legally adopted child the same status and rights, and the same legal relationship to his adopting parents as if he were born to them in lawful wedlock. Significantly, however, the statute only contemplated legally adopted children[2] and did not permit the adoption of adult persons. It was not until 1976 that the Ohio legislature adopted R.C. 3107.02 (effective January 1, 1977), which permitted certain adults to be adopted in instances where, among other things, the adult had established a child-foster caregiver or child-stepparent relationship as a minor.

---

[2] The statute defined a child as "any person under twenty-one years of age." *See* R.C. 3107.01(A) (formerly G.C. 8004-1), effective October 1, 1953, repealed January 1, 1977. Cindy was not under the age of twenty-one at the time she was adopted by the Settlor.

{¶ 23} Applying the foregoing to the circumstances of this case, we must presume that at the time the Settlor was formulating the relevant terms and conditions of the subject Trust in 1960, he understood that adults could not be adopted under Ohio law. Contrary to Cindy's position on appeal, we find logic dictates that the Settlor could not have intended to have adult adoptees included in the class of "child[ren] or more remote descendant of the settlor who shall be born after the date of this instrument." *See Harris*, 127 Ohio Misc.2d 1, 2003-Ohio-7361, 804 N.E.2d 1044, at ¶ 13. Accordingly, we agree with the trial court's assessment that Cindy is not an intended beneficiary of the Trust.

{¶ 24} In an effort to avoid the realities of the law in place at the time the Trust was executed, Cindy directs this court to "stranger to the adoption rule," which the Ohio Supreme Court has described as follows:

> Such rule basically is to the effect that there is a presumption that a testator or settlor intended to include a child adopted by him within a generally stated class, but where the testator or settlor is a stranger to an adoption of another, such as where the adoption takes place after the testator's death, it will be presumed that he did not intend the adopted child to be included within the designated class, unless a contrary intention clearly appears.

*Mills*, 45 Ohio St.3d, at 156, 543 N.E.2d 1206, citing *Phillips v. McConica*, 59 Ohio St. 1, 9, 51 N.E. 445 (1898); *Albright v. Albright*, 116 Ohio St. 668, 680, 157 N.E. 760 (1927); *Third Natl. Bank & Trust Co. v. Davidson*, 157 Ohio St. 355, 105 N.E.2d 573 (1952), paragraphs three and four of the syllabus; *Cent. Trust Co. v. Bovey*, 25 Ohio St.2d 187, 267 N.E.2d 427 (1971).

{¶ 25} In this case, the abrogation of the "stranger to the adoption" doctrine had not yet begun at the time the Settlor executed the inter vivos Trust in 1960. *See Mills* at 159-160 (discussing the implications of January 26, 1972 amendment to former R.C. 3107.13.). Moreover, indisputably, the Settlor was not a stranger to the adoption of Cindy, because he was Cindy's adopted father. Thus, Cindy contends that by virtue of the common law stranger to the adoption rule in effect at the time the Trust was executed, there is a presumption that the Settlor intended to include Cindy within the beneficiary class of "any child or more remote descendant of the Settlor who shall be born after the date of the trust."

{¶ 26} After careful consideration, we decline to expand prior judicial application of the stranger to the adoption rule to the factual circumstances presented in this case. Our reading of the Ohio Supreme Court's explanation of the common law stranger to the adoption rule in *Mills* indicates that the rule only contemplated the adoption of children, which, as stated, was defined in terms of the adoptee's age in 1960. *See* former R.C. 3107.01(A). Had Cindy been adopted by the Settlor when she was a "child," the stranger to the adoption rule may have raised a presumption favorable to her interests if she could overcome the fact that the adoption occurred after this irrevocable Trust was executed. Under the facts before this court, however, Cindy has not presented any meritorious basis to suggest the common law presumption should apply equally to an adult adoptee where, as here, such an adoption was not authorized by statute at the time the Trust was executed.

{¶ 27} Notwithstanding our rejection of Cindy's reliance on the stranger to the adoption rule, Cindy provides an alternative argument that asks this court to rely on the Settlor's "presumed" contemplation of future changes in statutory law at the time the Trust was executed. Cindy notes that the Trust language is broad, does not expressly exclude adopted persons from the class of beneficiaries, and "focuses on the birth of the child or more remote descendant in relation to the date of the execution of the Trust, not when the child becomes a member of [the Settlor's] family." Thus, Cindy asserts that this court must not assume the Settlor did not intend to include adult adoptees as beneficiaries merely because the law did not allow for such an adoption in 1960. In support of this position, Cindy directs this court to *Solomon,* 63 Ohio St.3d 35, 584 N.E.2d 1185 (1992).

{¶ 28} In *Solomon*, the Ohio Supreme Court considered the right of an adult adoptee to be recognized as beneficiary under a testamentary trust that provided for distribution of trust assets to the "then living children" of the testator's deceased brother. The natural born children of the testator's brother argued that the trust did not intend to include adopted adults in the class of beneficiaries because Ohio law did not recognize adult adoptions at the time the testamentary trust was drafted. The Ohio Supreme Court rejected the arguments set forth by the natural born children and ultimately concluded that the adult adoptee may take under the terms of the testamentary trust "as a member of the class of 'then living children' of the beneficiary." *Id.* at 40.

{¶ 29} In reaching this conclusion, the court in *Solomon* looked beyond the then-existing law when assessing the testator's intent. The court explained that in addition to presuming that the testator was aware that the law in Ohio only provided for the adoption of children at the time the testamentary trust was executed, it "must also presume that a testator is aware that the laws that affect his estate are subject to change." *Id.* at 39. The court explained:

> Although Ohio law did not allow adult adoptions at the time the testator executed his will, we note that other jurisdictions did allow such adoptions either explicitly by statute or by judicial interpretation of pertinent statutes. *See*, generally Annotation 21 A.L.R.3d 1012, 1017-1021, Section 3 (1968); Annotation, 83 A.L.R. 1395, 1396 (1933). It would be reasonable for the testator to have presumed that Ohio could, eventually, join the other jurisdictions in allowing such adoptions to occur. A testator who creates a trust that provides for termination at the death of a life beneficiary and distribution of trust assets to the "then living children" of the beneficiary is presumed to know that the legislative definition of children will be determined at the time the class closes and that the definition may include adult adoptees even though adult adoptions were not authorized at the time the trust was created.

*Id.* at 39-40.

{¶ 30} Pursuant to *Solomon*, Cindy argues that "the fact that Ohio law did not recognize the legal adoption of adults when the 1960 Trust was executed is not dispositive of [her] rights as an adult adoptee." She maintains this court must presume, as the Ohio Supreme Court did in *Solomon*, that the Settlor understood that laws in Ohio are subject to change and that the definition of a "child" may include adult adoptees even though adult adoptions were not authorized at the time the Trust was created.

{¶ 31} After careful consideration, we find *Solomon* to be distinguishable and, therefore, inapplicable to the circumstances of this case. Contrary to the nature of the Trust involved in this case, *Solomon* reviewed the application of a testamentary trust, rather than an inter vivos trust. As stated, "an inter vivos trust speaks from the date of its creation — not the date upon which the assets are to be distributed." *See Mills*, 45 Ohio St.3d, at 156, 543 N.E.2d 1206; *Tenney*, 165 Ohio St. 513, 138 N.E.2d 15, at paragraph one of the syllabus. Thus, "[p]rovisions of an inter vivos trust shall continue to be governed by the law existing at the time of its creation, absent a contrary expression of intent within the trust instrument itself." (Emphasis sic.) *Id.* at 157. Because *Solomon* is limited to the review of a testamentary trust, we decline to apply the decision to the terms of the irrevocable inter vivos trust disputed in this case. *See also Wendell v. AmeriTrust Co., N.A.*, 69 Ohio St.3d 74, 76-78, 630 N.E.2d 368 (1994) (applying the law in effect at the time of the will's execution and reiterating that "it has been the policy of [the Ohio Supreme Court] to apply the law in effect at the time of the execution of the will when interpreting testamentary documents since that law typically frames the intent of the testator"); *Willman v. Star Bank, N.A.*, 1st Dist. Hamilton No. C-930338, 1994 Ohio App. LEXIS 2667, 8 (June 22, 1994) (declining to apply the presumption in *Solomon* that the testator is aware that the laws that affect his estate are subject to change to all interpretations of wills in light of *Wendell*). Accordingly, we reject Cindy's attempt to interpret terms of the 1960 Trust in light of legislation that was enacted years later.

{¶ 32} Based on the foregoing, we find no presumptions, rules of construction, then-existing laws, or applicable case law to suggest the Settlor intended to include adult adoptees within the Trust's stated beneficiary class of "any child or remote descendant of the Settlor." Accordingly, the fact that Cindy was born after the Trust was executed is irrelevant. In rendering this conclusion, we recognize that R.C. 3107.15(A)(2), discussed below, encompasses all "adopted persons" and applies retroactively. Nevertheless, consideration of the Settlor's intent at the time the Trust was executed in this case is necessary and relevant to our resolution of Cindy's constitutionality challenges to R.C. 3107.15(A)(3), addressed below.

## B. Application of R.C. 3107.15(A)

{¶ 33} Having determined that the Settlor could not have intended to include an adult adoptee as beneficiaries under the Trust where adults could not be adopted at the time the Trust was executed, we now turn to the implications of R.C. 3107.15. The statute provides that a final decree of adoption issued by Ohio shall have the following effect:

> (2) To create the relationship of parent and child between petitioner and the adopted person, as if the adopted person were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, and whether executed or created before or after May 30, 1996, which do not expressly exclude an adopted person from their operation or effect;

> (3) Notwithstanding division (A)(2) of this section, a person who is eighteen years of age or older at the time the person is adopted, and the adopted person's lineal descendants, are not included as recipients of gifts, devises, bequests, or other transfers of property, including transfers in trust made to a class of persons including, but not limited

to, children, grandchildren, heirs, issue, lineal descendants, and next of kin, for purposes of inheritance and applicability of statutes, documents, and instruments, whether executed or created before or after May 30, 1996, unless the document or instrument expressly includes the adopted person by name or expressly states that it includes a person who is eighteen years of age or older at the time the person is adopted.

{¶ 34} On appeal, Cindy argues she qualifies as a beneficiary under the Trust by operation of R.C. 3107.15(A)(2). She contends that while R.C. 3107.15(A)(2) applies retroactively, the exception set forth under R.C. 3107.15(A)(3) unconstitutionally imposes burdens and obligations on a transaction that transpired before the effective date of the amended statutory provision.

{¶ 35} Whether a statute is unconstitutionally retroactive requires a two-step determination. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio0542, 882 N.E.2d 899, ¶ 7-9. The initial determination is whether the General Assembly intended the statute to apply retroactively. *Id.* at ¶ 8. Because statutes are presumed to apply only prospectively, the statute must contain some language indicating that it applies to transactions or conduct occurring on or before the effective date of the statute, before it will be held unconstitutional. *Bielat v. Bielat*, 87 Ohio St.3d 350, 721 N.E.2d 28 (2000).

{¶ 36} R.C. 3107.15(A)(3) states that its prohibitions against transfers of trust property apply to any and all documents or instruments, "whether executed or created before or after May 30, 1996." Thus, the language set forth under R.C. 3107.15(A)(3) demonstrates the General Assembly's clear intent to apply the section retroactively.

{¶ 37} The second determination that a constitutional inquiry requires is whether the retroactive statute is substantive or merely remedial. Enactment of retroactive remedial statutes does not offend Article II, Section 28. *See id.*; *Nease v. Med. College Hosp.*, 64 Ohio St.3d 396, 596 N.E.2d 432 (1992). "On the other hand, a retroactive statute is substantive — and therefore unconstitutionally retroactive — if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Id.* at 353, citing *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998); *see also Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1983).

{¶ 38} Here, Cindy does not dispute that her rights did not vest until after Nancy's death in May 2016, which occurred after the effective date of R.C. 3107.15(A)(3). However, she contends that R.C. 3107.15(A)(3) is substantive because it "unconstitutionally imposes restrictions impacting the intent of the Settlor which did not exist at the time of the drafting of the document." Thus, she asserts that retroactive application of the statute would unconstitutionally impair the Settlor's right to distribute and protect his property in violation of Article I, Section 1, of the Ohio Constitution. In support of this proposition, Cindy relies extensively on the Second District's constitutional interpretation of R.C. 3107.15(A)(3) in *Bank One Trust Co., N.A. v. Reynolds*, 173 Ohio App.3d 1, 2007-Ohio-4197, 877 N.E.2d 342 (2d Dist.).

{¶ 39} *Reynolds* concerned the interpretation of certain language contained in a trust established by the last will and testament of the decedent in 1959. The

trust provided that following the decedents' death, the trustee shall have discretion to manage and apply the assets and income of the trust for the use of the decedent's daughter, grandchildren, or then living issue. The trust further provided that, following the death of the decedent's daughter, the trustee was to "hold and manage [the] trust assets for the benefit successively of my living lineal descendants per stirpes, indefinitely, subject only to the termination of the trust as hereafter provided." Relevant to his appeal, the Reynold's trust defined the terms "lineal descendants" and "issue" as including "both blood and adoption relationships." Thus, pursuant to the express terms of the Reynold's trust, adopted individuals were unambiguously named as intended beneficiaries under the terms of the trust.

{¶ 40} In *Reynolds*, the decedent died in 1964 and his daughter died in 2001. Pursuant to the terms of the trust, the trustee commenced an action to seek a declaration concerning the status of the decedent's two great-grandchildren as potential beneficiaries. One of the potential beneficiaries, Mickey, was adopted by the decedent's blood grandchild, appellant, Rodney Reynolds, when Mickey was 27 years old. Ultimately, the probate court determined that Mickey was barred from benefitting from the trust pursuant to the language set forth under R.C. 3107.15(A)(3). *Id.* at ¶ 4-8.

{¶ 41} On appeal, Reynolds argued that the probate court erred when it determined that Mickey is not a "lineal descendant" of the decedent and, therefore, not among the class of persons who are beneficiaries of the testamentary trust. *Id.* at ¶ 11. In assessing the plain language of R.C. 3107.15(A)(3), the Second District

noted that the trust "neither identifies Mickey by name nor states that persons who were more than eighteen years of age when they were adopted are entitled to benefit from the trust." *Id.* at ¶ 18. Thus, the appellate court concluded that "notwithstanding the broad definition of 'lineal descendants' in the trust, Mickey is barred from benefitting from the trust pursuant to the requirements of R.C. 3107.15(A)(3)." *Id.*

{¶ 42} However, this did not end the appellate court's analysis. Reynolds further argued that R.C. 3107.15(A)(3), which became effective of March 14, 2003, "cannot retroactively affect Mickey's status as a beneficiary under the trust established by [the decedent], a status which became effective on the death of her daughter * * * on January 7, 2001." *Id.* at ¶ 21. In assessing whether retroactive application of R.C. 3107.15(A)(3) is substantive, the appellate court observed that (1) the trust identified its beneficiaries as "lineal descendants," (2) the trust defined lineal descendants broadly to include "in every instance both blood and adoption relationships," and (3) the definition of lineal descendants "makes no distinction with respect to the age of the person when he or she is adopted." *Id.* at ¶ 26. Thus, the appellate court determined that absent the new requirements of R.C. 3107.15(A)(3), Mickey would otherwise be considered a lineal descendant pursuant to the terms broad definition in the trust. Under such circumstances, the appellate court found R.C. 3107.15(A)(3) to be unconstitutional, stating:

> [R.C. 3107.15(A)(3)] requires the testator to also identify by name in the trust document those persons who are adults when they are adopted, or to include a provision in the trust document expressly

including persons who are eighteen or more years of age when they are adopted. [The decedent] was not subject to those "burdens" or "obligations" when she wrote her will. They are burdens because they limit a settlor's right to create a trust as a means of "protecting property," which Section 1, Article I of the Ohio Constitution identifies as an inalienable right. R.C. 3107.15(A)(3) thus directly and materially affects substantive rights, and being retroactive in its effects with respect to the provisions of the testamentary trust that benefits [Mickey], R.C. 3107.15(A)(3) violates Article II, Section 28, and is therefore unconstitutional.

*Id.* at ¶ 27. Accordingly, the Second District reversed the judgment of the probate court and remanded the matter for the court "to declare that [Mickey] is a lineal descendant of [the decedent]." *Id.* at ¶ 49.

{¶ 43} After careful review, we find the unique circumstances presented in *Reynolds* to be distinguishable. Here, Cindy's reliance on *Reynolds* is predicated on her belief that "the 1960 Trust language must be deemed to include persons adopted by [the Settlor] by virtue of the presumption that arises under the stranger to the adoption rule." However, as previously stated, we reject Cindy's interpretation of the Trust and her reliance on the stranger to the adoption rule. Given the status of Ohio law in 1960, we find the Settlor could not have intended to have adult adoptees included in the class of "child[ren] or more remote descendant of the Settlor who shall be born after the date of this instrument." Unlike the circumstances presented in *Reynolds*, the Trust in this case contained no language indicating that the Settlor intended the class of beneficiaries to include "adopted relationships," which would reasonably include adult adoptees, as the testator did in *Reynolds*. Thus, unlike *Reynolds*, the requirements of R.C. 3107.15(A)(3) are not inconsistent with the

Settlor's intent in this case, and therefore, do not retroactively impose new burdens or restrictions on the Settlor's "right to create a trust as a means of protecting his property." In short, R.C. 3107.15(A)(3) does not alter the legal consequences of the 1960 instrument. Accordingly, we are unable to conclude that R.C. 3107.15(A)(3) is unconstitutional as applied to the facts of this case.

{¶ 44} Assuming arguendo that the provision governing adopted persons under R.C. 3107.15(A)(2) applies retroactively to the instant Trust because it does not expressly exclude an adopted person from its operation or effect, we agree with the trial court that application of R.C. 3107.15(A)(3) is appropriate and consistent with the intention of the Settlor in this case. Because the Trust neither identifies Cindy by name nor states that persons who were more than 18 years of age when they were adopted are entitled to benefit from the Trust, Cindy is barred from benefitting from the Trust. Accordingly, we find the trial court did not err in granting judgment in favor of Jeffrey and Amy Firestone and declaring that "R.C. 3107.15(A)(3) is constitutional as applied to the Trust and operates to exclude defendants Cindy Firestone and Deborah Lynn Boylen from status as beneficiaries of the Trust."

{¶ 45} Appellant's sole assignment of error is overruled.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
RAYMOND C. HEADEN, J., CONCURS IN JUDGMENT ONLY